UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DANIEL SITEK and | ) | |
| TERESA SITEK, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 3:06-CV-138 RM |
| | ) | |
| J. CERNA TRUCKING, INC., a/k/a | ) | |
| J. CERNA TRUCKING OF CHICAGO, INC., | ) | |
| TGP LAND, INC., MIDWEST | ) | |
| INTER-MODAL SERVICES, INC., and | ) | |
| HYUNDAI AMERICA SHIPPING | ) | |
| AGENCY, INC., | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

This cause is before the court on the motion of cross-claimant Hyundai

Merchant Marine Co., LTD, (named in this lawsuit as Hyundai America Shipping

Agency, Inc.) for summary judgment against cross-claim defendant Midwest Inter-

Modal Services, Inc. seeking an order directing Midwest to assume its defense and

provide it indemnification, including all reasonable fees and costs incurred from

the inception of this case through the date of ultimate resolution. For the reasons

that follow, the court concludes that Hyundai's motion should be granted in part.

Summary judgment is appropriate when "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In

deciding whether a genuine issue of material fact exists, "the evidence of the non-

movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Summary judgment is particularly appropriate in cases involving a written contract's interpretation. Tingstol Co. v. Rainbow Sales, Inc., 218 F.3d 770, 771 (7th Cir. 2000). "Whether a contract is clear or ambiguous is a matter of law for the court, but the meaning of any ambiguity is a question of fact for a jury." Tingstol v. Rainbow Sales, 208 F.3d at 771.

## I. FACTS

The facts needed to resolve Hyundai's motion for summary judgment are undisputed. The following facts are taken from the summary judgment record and are viewed in the light most favorable to Midwest.

### *The Underlying Complaint*

Plaintiffs Daniel Sitek and Teresa Sitek brought this action after Mr. Sitek was injured in a semi tractor-trailer collision on Interstate 80 in Granger, Indiana on December 5, 2005. The plaintiffs' second amended complaint alleges the following facts. Jose Cerna, an employee of defendant J. Cerna Trucking, Inc., was driving a semi tractor owned by J. Cerna Trucking heading eastbound on Interstate 80. Mr. Cerna was driving behind an eastbound semi tractor owned by defendant TGP Land, Inc. Both semi tractors were pulling trailers that contained freight. The TGP semi tractor was experiencing transmission problems, which the

plaintiffs allege caused it to run at a dangerously slow speed. The driver of the TGP semi tractor waited for Mr. Cerna and then continued driving the semi tractor with Mr. Cerna following immediately behind him.

Mr. Sitek was driving a semi tractor-trailer behind the J. Cerna Trucking semi tractor-trailer. The plaintiffs allege that as a result of J. Cerna Trucking's and TGP's negligence in operating the semi-tractors at dangerously slow speeds and without adequate warning they caused a collision with Mr. Sitek.

The plaintiffs also sued Midwest and Hyundai. As explained in greater detail later, Hyundai, a shipping logistics corporation, interchanged to Midwest the container and chassis that were attached to J. Cerna Trucking's semi tractor at the time of the accident. Midwest authorized J. Cerna Trucking to obtain possession of the interchanged equipment. The plaintiffs contend that Midwest and Hyundai had control over the truck companies and drivers and owed Mr. Sitek a duty to use reasonable care under the circumstances in the transport of the goods. They further contend that Midwest and Hyundai breached this duty and as a result, caused Mr. Sitek to suffer injuries and damage.

*The Indemnity Agreement*

On December 5, 2005, Hyundai interchanged a container identified as HDMU2919966 and a chassis identified as HDMZ201276 to Midwest that were attached to the tractor operated by Mr. Cerna. Midwest had agreed to be bound by the provisions of the Uniform Intermodal Interchange Agreement, including its

subsequent amendments and revisions, which governed the interchange of the Equipment — chassis and container — from Hyundai to Midwest. The Agreement defines "Equipment" as that which is "commonly used in the road transport of intermodal freight including trailers, chassis, containers and associated devices." (Agreement, ¶ B.4). The Agreement further provides that if Midwest authorizes another party to obtain possession of the Equipment, Midwest remains responsible for the performance of all terms of this Agreement "in the same manner as if the Equipment were in the possession of [Midwest] . . . ." (Agreement, ¶ F.3).

According to the Agreement, Midwest was a Motor Carrier and Hyundai was both a Provider and Equipment Owner. Hyundai was therefore an Indemnitee under the Agreement and as an Indemnitee, seeks to recover pursuant to the following indemnification clause:

> Subject to the exceptions set forth in Subsection (b) . . . Motor Carrier agrees to defend, hold harmless, and fully indemnify the Indemnitees (without regard to whether the Indemnitees' liability is vicarious, implied in law, or as a result of the fault or negligence of the Indemnitees), against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage, including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4 (collectively, the "Damages"), caused by or resulting from the Motor Carrier's: use or maintenance of the Equipment during an Interchange Period . . .

(Agreement, ¶ F.4(a)). Pursuant to subsection (b)(ii), the indemnity provision doesn't apply to the extent damages "are caused by or result from defects to the Equipment with respect to items other than those set forth in Exhibit A, unless

caused by or resulted from the negligent or intentional acts or omissions of the Motor Carrier, it agents, employees, vendors or subcontractors . . . ." (Agreement, ¶ F.4(b)(ii)). Exhibit A sets forth the items that Midwest had responsibility for visually or audibly checking prior to use of the Equipment, including "11. Electrical Wiring/Lights - (Check that lights are in working order) . . ." (Agreement, Exhibit A, p. 12). The "list does not include latent defects unless caused by or resulting from the negligent or intentional acts or omissions of [Midwest], its agents, employees, vendors or subcontractors . . . ." (Agreement, Exhibit A, p. 12).

The Agreement also required Midwest to obtain a commercial automobile insurance policy for $1,000,000, insuring all Equipment involved in the interchange, including vehicles of its agents, and naming Hyundai as an additional insured. (Agreement, ¶ F.6). As the Agreement required, Midwest had an endorsement to its commercial automobile liability policy, a Truckers Uniform Intermodal Interchange Endorsement (UIEE-1), stating: "It is agreed that such insurance as afforded by the policy for Auto Bodily Injury and Property Damage Liability applies to liability assumed by the named insured, as 'Motor Carrier Participant,' under Section F.4. . . ."

In September 2007, Hyundai sent a written demand to Midwest for indemnification and assumption of defense pursuant to the indemnification provision. Hyundai followed up with the same request about a month later in a telephone conversation. Midwest didn't respond to Hyundai's request.

*The Taillights*

At the time of impact, there were four taillights on the back of the Cerna chassis, none of which were damaged on impact. The lights were examined after impact and one was inoperable. The inoperable taillight wasn't an out of service violation so that the chassis in question wouldn't have been removed from service or taken off the road by Indiana State Police. An eyewitness who observed the chassis before the collision said he could observe its taillights from a distance.

## II. DISCUSSION

Hyundai requests judgment against Midwest for assumption of defense and indemnification, including all costs and expenses related to its defense of the underlying claim and enforcement of the Agreement. Midwest responds that Hyundai's claim for indemnification is premature and not ripe for adjudication, because Hyundai hasn't incurred damages as a result of the plaintiffs' action in this case. Even if the claim is ripe, Midwest contends, there is an issue of material fact as to whether there was a latent defect with the taillight on the Equipment Hyundai provided, thus precluding Hyundai from indemnification under the Agreement. Midwest further argues that assumption of defense at this stage wouldn't be in the interests of judicial economy or the best interest of Hyundai.

The Agreement provides that "[t]he laws of the state of Maryland . . . shall govern the validity, construction, enforcement, and interpretation of this Agreement without regard to conflicts of law principles." Midwest doesn't address

this contract term in its response brief, but instead cites only to Indiana cases. When the court's subject matter jurisdiction is premised on diversity, the choice of law rules of the state in which the court sits determine the applicable substantive law in this case. *See* Sound of Music Co. v. Minn. Mining. & Mfg. Co., 477 F.3d 910, 915 (7th Cir. 2007) (citations omitted). Indiana choice of law doctrine favors contractual stipulations as to governing law. Allen v. Great Am. Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002) (citations omitted). The Agreement states that it shall be governed by Maryland law; the court applies Maryland substantive law as stipulated in the Agreement.

The scope of indemnification is a matter of contract interpretation. Nova Research, Inc. v. Penske Truck Leasing Co., 952 A.2d 275, 284 (Md. 2008). Maryland applies an objective interpretation of contracts, so that "[i]f a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation." Nova Research v. Penske Truck, 952 A.2d at 283 (citations omitted). A contract is ambiguous if it is susceptible to more than one meaning when read by a reasonably prudent person. Nova Research v. Penske Truck , 952 A.2d at 283 (citations omitted). When interpreting the contract's terms, the court considers "the customary, ordinary and accepted meaning of the language used." Nova Research v. Penske Truck, 952 A.2d at 283 (*citing* Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co., 844 A.2d 460, 469 (Md. 2004)).

When analyzing indemnification clauses like that in this Agreement, courts have relied on cases interpreting insurance contracts. *See* CMA -CGM (Am.) Inc. v. Empire Truck Lines Inc., 2008 WL 5102283, *6 (Tex. App. 2008) (applying Maryland law) (unpublished); *see also* NYK Line v. P.B. Indust. Inc., 2004 WL 1629613, *4 (S.D. Ind. 2004) (applying Maryland law) (unpublished); Mass Transit Admin. v. CSX Transp., Inc., 708 A.2d 298 (Md. 1998) ("Inasmuch as the indemnification was intended, at a minimum, to serve as liability insurance . . ., it is appropriate to interpret and apply the indemnification in the same manner as liability insurance policies are interpreted and applied."). In NYK Line v. P.B. Indust., the Southern District of Indiana, applying Maryland law, addressed a similar indemnification provision found in the parties Interchange Agreement, and explained:

> [A]lthough the Interchange Agreement is not an insurance contract or policy, *per se*, it is an agreement pursuant to which PBI agreed to indemnify NYK, defend NYK and procure insurance . . . . These obligations and the terms of art invoked therein are typically part of an insurance contract with an insurance company. . . . Therefore, reference to decisions involving these same obligations as they arise in insurance policies is appropriate, as the clear intent of Section F of the Interchange Agreement is to sort through the insurance related obligations of the signatories. . . . PBI is for all practical purposes an insurer and NYK the insured.

NYK Line v. P.B. Indust., 2004 WL 1629613, *4. This court similarly turns to the interpretation given to an insurer's duty to defend and indemnify when analyzing Midwest's obligations under the Agreement.

Citing Indiana case law, Midwest maintains that Hyundai's claim for indemnification is premature. As already noted, Maryland, not Indiana, law applies. Maryland courts have found that when determining a claim for contractual indemnity, "[t]he commencement and scope of the obligation depends on the terms of the contract." Pulte Home Corp. v. Parex, Inc., 942 A.2d 722, 730 (Md. 2008).

> [I]ndemnity agreements may provide (1) indemnity against *loss or damage,* under which the indemnitee may not recover until it has made payment or otherwise suffered an actual loss or damage within the scope of the indemnity; (2) indemnity against *liability* under which an action may be brought as soon as the liability is legally imposed, as when judgment is entered, even though no actual loss has yet been sustained (the judgment has not been paid); or (3) a promise by the indemnitor "to perform a certain act or make specified payments for the benefit of the indemnitee," under which an immediate right of action accrues upon the failure of the indemnitor to perform, regardless of whether any actual damage has been sustained. The nature of the indemnity will determine not only when a right of action accrues but also the measure of damage that may be recovered.

Pulte Home v. Parex, 942 A.2d at 730 (citations omitted). Indemnity contracts may contain a hybrid of these. *See* Levin v. Friedman, 317 A.2d 831, 835 (Md. 1974); *see also* Superintendent of Ins. of New York v. Livestock Market Ins. Agency, 709 S.W.2d 897, 903 (Mo. App. 1986).

This Agreement's indemnification provision required Midwest to indemnify against liability and to perform a certain act — to defend Hyundai and pay attorney fees and costs arising as a result of Midwest's wrongful failure to defend. As explained below, the duty to defend is broader than the duty to indemnify and Hyundai's claim for assumption of defense, attorney fees and costs isn't

premature. Hyundai's claim for indemnification against liability, however, is premature.

"[L]iability indemnity exists where someone agrees to satisfy a certain liability that may be incurred by someone else." *See* Quaker State Oil Ref. Corp. v. Nat'l Fulfillment Sys. Corp., 928 F.2d 399, *4 (4th Cir. 1991) (applying Maryland law) (unpublished). Midwest agreed to hold Hyundai harmless against any liability that might befall Hyundai as a result of Midwest's use or maintenance of the Equipment, subject to certain enumerated exceptions. The cause of action for liability indemnity accrues as soon as liability is legally imposed or when judgment is entered. *See* Quaker State v. Nat'l Fulfillment, 928 F.2d 399 at *4. Generally, a "duty to indemnify . . . refers to an insurer's responsibility to pay a monetary award when its insured has become liable for a covered claim." *See* Perdue Farms, Inc. v. Travelers Cas. and Surety Co. of Am., 448 F.3d 252, 257-258 (4th Cir. 2006) (applying Maryland law). "[C]ourts applying Maryland law may conclude that an insurer has a duty to defend, but commonly withhold judgment on the scope of the duty to indemnify until the insured is found liable and the basis of any settlement or judgment is determined." Perdue Farms v. Travelers Cas., 448 F.3d at 259-260 (*citing* Sheets v. Brethren Mut. Ins. Co., 679 A.2d 540, 551 (Md. 1996) *and* Mut. Benefit Group v. Wise M. Bolt Co., 227 F. Supp. 2d 469, 478-479 (D. Md. 2002)). This court declines to rule on Hyundai's request for indemnification before liability is determined.

The Agreement's indemnification provision also requires Midwest to defend Hyundai. In Maryland, the duty to defend is broader than the duty to indemnify. *See* <u>Perdue Farms v. Travelers Cas.</u>, 448 F.3d at 257. "These obligations are conceptually distinct, and are triggered by different circumstances." <u>Perdue Farms v. Travelers Cas.</u>, 448 F.3d at 257. A "major distinction is that the duty to defend depends only upon the facts as alleged, and the duty to indemnify depends upon liability." <u>Walk v. Hartford Cas. Ins. Co.</u>, 852 A.2d 98, 106 (Md. 2004) (citations omitted). The duty to defend is triggered at the outset of litigation against the insured, "whenever the underlying complaint and other appropriate extrinsic evidence reveal claims that are even potentially covered under the insurance policy." <u>Perdue Farms v. Travelers Cas.</u>, 448 F.3d at 257 (*citing* <u>Walk v. Hartford Cas.</u>, 852 A.2d at 106-107 (Md. 2004)). The insured may introduce extrinsic evidence to demonstrate a duty to defend when the plaintiff's complaint neither conclusively establishes or negates a potentiality of coverage. *See* <u>ACE Am. Ins. Co. v. Ascend One Corp.</u>, 570 F. Supp. 2d 789, 795 (4th Cir. 2008) (*citing* <u>Aetna Cas. & Sur. Co. v. Cochran</u>, 651 A.2d 859 (Md. 1995)); *see also* <u>Cowan Sys., Inc. v. Harleysville Mut. Ins. Co.</u>, 457 F.3d 368, 372 (4th Cir. 2006); <u>Teletronics Intern., Inc. v. CNA Ins. Co./Transp. Ins. Co.</u>, 120 Fed. Appx. 440, 443 (4th Cir. 2005) (*citing* <u>Litz v. State Farm Fire & Cas. Co.</u>, 695 A.2d 566, 570 (Md. 1997)). On the other hand, when deciding to defend, the insurer may only rely on the policy's language and the facts alleged in the complaint. <u>Id.</u>

"In order for an insurer to be obligated to defend an insured, the underlying tort suit need only *allege* action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." Perdue Farms v. Travelers Cas., 448 F.3d at 257 (*citing* Sheets v. Brethren Mut., 679 A.2d at 544). Generally, "if any claims potentially come within the policy coverage, the insurer is obligated to defend all claims, notwithstanding alternative allegations outside the policy's coverage." Perdue Farms v. Travelers Cas., 448 F.3d at 257 (*citing* Utica Mut. Ins. Co. v. Miller, 746 A.2d 935, 940 (Md. Ct. Spec. App. 2000)). Any doubt about the potentiality of coverage is resolved in favor of the insured. *See* Hartford Cas. Ins. Co. v. Chase Title, Inc., 247 F. Supp. 2d 779, 780 (D. Md. 2003) (*citing* Chantel Assocs. v. Mount Vernon Fire Ins. Co., 656 A.2d 779 (Md.1995)).

Hyundai's request for assumption of defense isn't premature, but rather, was triggered at the onset of the instant litigation. The Agreement provides that Hyundai is entitled to a defense (without regard to whether the liability is vicarious, implied in law, or as a result of Hyundai's fault or negligence), against a third party's suit for bodily injury or property damage. *See* CMA-CGM v. Empire Truck, 2008 WL 5102283, * 6 (finding that the Interchange Agreement provided indemnification for the equipment provider's own acts or omissions). The provision doesn't apply if the injury or damage was caused by or resulted from defects to the Equipment, such as a latent defect in the taillights. Master Motor Carrier Inspector William Beckford testified that the taillights on the Cerna chassis involved in the accident were tested and although none of the four taillights

appeared to have been damaged during collision, one taillight wasn't working when tested. Midwest claims that this discovery raises a question of fact as to whether the taillight on the chassis suffered a latent defect.

The duty to defend is triggered whenever there are claims in the underlying suit that are even potentially covered by the indemnification clause. Midwest says there is a question as to whether the taillights had a latent defect, which would preclude indemnification, but Midwest doesn't provide evidence that the taillights had a latent defect or that the injury or damage was caused by or resulted from defects to the Equipment. The Agreement specifically required Midwest to check the lights to ensure they were in working order. Because the allegations in plaintiff's complaint indicate that the cause of the accident was J. Cerna Trucking's and TGP's dangerously slow speed and lack of adequate warning, the plaintiffs' claims allege action that at least is potentially covered by the indemnification provision. Midwest therefore has a duty to defend Hyundai in this action.

While the duty to defend arises when a potentially covered claim is filed or occurrence happens, the duty isn't breached until the insurer is apprised of the claim or occurrence and, without legal justification, fails to undertake the defense. *See* Sherwood Brands, Inc. v. Hartford Accident and Indem. Co., 698 A.2d 1078, 1085 (Md. 1997). In September 2007, Hyundai sent a written demand to Midwest for indemnification and assumption of defense. Midwest didn't respond to this request. Midwest therefore must pay Hyundai for its reasonable attorney fees and

costs incurred in defending this action, including its reasonable attorney fees and costs in enforcing the indemnity provision. *See* <u>Quaker State v. Nat'l Fulfillment</u>, 928 F.2d 399, *3 ("If an insurer wrongly refuses to defend its insured, the insured may recover its attorneys' fees in the suit pressed by the third party *and* the attorneys' fees in the insured's subsequent suit against the insurance company.") (citations omitted).

Midwest contends that assumption of Hyundai's defense at this stage isn't in the interest of judicial economy or in the best interest of Hyundai. Midwest reasons that Hyundai may be found independently responsible for the accident as a result of having provided defective equipment to Midwest, in which case, Hyundai's liability would fall outside the coverage. Midwest also points out that there is a provision in the indemnity clause that provides for the recovery of attorney's fees, should it become appropriate.

"[B]oth Maryland and Indiana law provide that an insured may select its own counsel if a conflict of interest exists between an insured. . . and an insurer . . . in connection with the defense of a lawsuit against the insured." <u>NYK Line v. P.B. Indust.</u>, 2004 WL 1629613, *7 (*citing* <u>Roussos v. Allstate Ins. Co.</u>, 655 A.2d 40 (Md. Ct. Spec. App. 1995); <u>State Farm Mut. Auto Ins. Co. v. Glasgow</u>, 478 N.E.2d 918, 923 (Ind. Ct. App. 1985)).

> When a conflict of interest arises, the insurer is not relieved of this responsibility. The insurer must either provide an independent attorney to represent the insured or pay for the cost of defense incurred by the insured hiring an attorney of his or her choice. The insured must be informed of the nature of the conflict and given the

> right either to accept an independent attorney selected by the insurer or to select an attorney for himself or herself.

Roussos v. Allstate, 655 A.2d at 43 (citations omitted). The Roussos court explained that a conflict of interest exists when coverage is at issue and there are covered and uncovered claims. Roussos v. Allstate, 655 A.2d at 43. "Because it is in the insurer's interest to establish noncoverage and in the insured's interest to establish coverage, their interests are diametrically opposed and the insurer must allow the insured to choose independent counsel." Roussos v. Allstate, 655 A.2d at 43.

Hyundai is entitled to an assumption of defense by Midwest. Given the parties' disagreement as to coverage, there exists a conflict of interest at this stage in the proceeding. Midwest has an incentive to develop facts establishing that the accident was caused by a latent defect in the Equipment and thereby outside the coverage provided in the indemnity provision — an interest divergent from Hyundai's interests. Midwest therefore must reimburse Hyundai for the costs and fees already incurred in defending plaintiffs' claims and enforcing the Agreement and the costs and fees incurred in defending this action going forward. Circumstances may change such that a conflict of interest no longer is present in the representation of Hyundai and Midwest; if that happens, Midwest's counsel should provide joint representation for the parties.

III. CONCLUSION

For these reasons, Hyundai Merchant Marine Co., LTD's motion for summary judgment (document # 75) is GRANTED IN PART. Midwest Inter-Modal Services, Inc. is required to assume Hyundai's defense in this action and reimburse Hyundai's reasonable costs and fees incurred in defending plaintiffs' claims and enforcing the Agreement, plus all reasonable costs and fees incurred in defending this action going forward. Within fifteen days from the date of this order, Hyundai shall submit to the court a motion and attached affidavit setting forth its request for costs and fees incurred to date. Midwest will have fifteen days to respond. A hearing will be scheduled by separate order to determine the reasonableness of Hyundai's request.

SO ORDERED.

ENTERED:  March 9, 2009

       /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court